*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0046p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

       *Plaintiff-Appellee,*

       *v.*

TYRONE MADDEN (05-4304) and DIANA BLAINE
BROWN (06-3736),

       *Defendants-Appellants.*

Nos. 05-4304; 06-3736

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-00616—John R. Adams, District Judge.

Submitted: November 1, 2007

Decided and Filed: January 25, 2008

Before: SILER, MOORE, and GILMAN, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Nathan A. Ray, Akron, Ohio, Terry H. Gilbert, FRIEDMAN & GILBERT, Cleveland, Ohio, for Appellants. Robert J. Patton, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

       GILMAN, J., delivered the opinion of the court, in which SILER, J., joined. MOORE, J. (p. 11), delivered a separate opinion concurring in Case No. 05-4304 and dissenting in Case No. 06-3736.

---

## OPINION

---

       RONALD LEE GILMAN, Circuit Judge. Tyrone Madden and Diana Blaine Brown were both charged with one count of conspiring to possess phencyclidine (PCP) with the intent to distribute the drug. Madden was separately charged with being a felon in possession of a firearm. He was later charged in a superseding information with one count of conspiracy to import heroin into the United States and one count of bank fraud. Both defendants entered guilty pleas. At Madden's sentencing hearing, the original indictment was dismissed and Madden was sentenced to 78 months of imprisonment. The district court also imposed an additional eight-month sentence, to be served consecutively, for violating the terms of his supervised release related to a previous federal conviction. Brown, on the other hand, pled guilty to the charge in the original indictment,

but she then failed to maintain contact with pretrial services and became a fugitive. When she surrendered over a year later, the district court held a sentencing hearing and sentenced her to 37 months of imprisonment.

Madden appeals the district court's judgment because he asserts that the court did not have jurisdiction to sanction him for his prior supervised-release violation. Brown appeals her sentence on the basis that the district court failed to adequately consider her request for a reduced sentence. For the reasons set forth below, we **AFFIRM** the district court's judgment in both cases.

## I.  BACKGROUND

On December 15, 2004, a federal grand jury returned a two-count indictment against Madden, Brown, and another alleged conspirator. Count one charged Madden and Brown with conspiracy to possess with the intent to distribute more than 1,000 grams of PCP, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Madden was also charged with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). This court ordered that their appeals be consolidated for briefing and submission.

### A.      Madden's conviction and sentence

Six months after the return of the initial indictment, the government filed a superseding information against Madden. The information charged Madden with one count of conspiracy to import heroin into the United States, in violation of 21 U.S.C. §§ 960(a)(1) and 963, and one count of bank fraud, in violation of 18 U.S.C. § 1344. Madden pled guilty to both counts pursuant to a negotiated plea agreement, and the government agreed to dismiss the counts from the original indictment.

The district court sentenced Madden to 78 months' imprisonment for the two counts in the superseding information. In addition, the court addressed a previous violation of the conditions of his supervised release stemming from a 1998 federal conviction for bank fraud. The court concluded that it had jurisdiction, under 18 U.S.C. § 3583(i), to sanction Madden for this violation. Furthermore, Madden conceded that a violation of his supervised release had indeed occurred. The court then imposed an 8-month prison term and ordered that it be served consecutively to the 78-month prison term. Madden now challenges the district court's ruling on the supervised-release violation, claiming that the court did not have jurisdiction to impose a sanction under § 3583(i).

### B.      Brown's conviction and sentence

In February of 2005, Brown pled guilty to the first charge of the indictment pursuant to a negotiated agreement. She then violated the terms of her pretrial release both by failing to make contact with the court-appointed psychologist and by not appearing for random drug tests as required by the court. The court issued a summons requiring Brown to appear for a hearing on February 22, 2005, but Brown did not respond and could not be found. She remained a fugitive until February of 2006, at which point she turned herself in.

For the most part, the Presentence Report (PSR) filed by Brown's probation officer tracked the Guidelines calculations contained in the plea agreement. The government, among other things, agreed to seek a four-point downward departure for substantial assistance under USSG § 5K1.1 and a three-point reduction for acceptance of responsibility pursuant to USSG § 3E1.1. But the PSR recommended a two-level upward adjustment for obstruction of justice because Brown had willfully failed to appear for court-ordered treatment and for her scheduled hearing.

Brown, in turn, requested a downward departure pursuant to USSG § 5K2.0. She claimed that she was eligible for a reduced sentence because of her undiagnosed depression and diminished

capacity, her two young children, the fact that she was pregnant when she surrendered, and the "aberrant" nature of her behavior. At the sentencing hearing, the district court granted all of the government's requested reductions and enhancements and calculated the appropriate Guidelines range to be 30 to 37 months of imprisonment. The court then addressed the § 3553(a) factors and imposed a sentence of 37 months' imprisonment without explicitly ruling on Brown's motion. When Brown asked the district court to make a ruling on the motion, the court denied it, noting "I think I've given her the consideration as it relates for acceptance of responsibility. I think in that view that ruling was giving her more than fair consideration." Brown appeals her sentence, arguing that the district court's failure to consider and grant her motion was unreasonable.

## II. ANALYSIS

**A.      The district court's jurisdiction over Madden's supervised-release violation**

*1.        18 U.S.C. § 3583(i) and the facts underlying Madden's offense*

Under 18 U.S.C. § 3583, courts are given the authority to include as part of a defendant's sentence a term of supervised release after imprisonment. Courts also have the ability, under § 3583(i), to revoke supervised release and impose new sanctions for supervised-release violations after that term has expired:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

The Ninth Circuit has expounded on this statutory language, explaining that

> a district court can revoke a term of supervised release after that term has expired if: (1) a violation warrant or summons was issued before the term expired; and (2) the delay between the end of the term of supervised release and the district court's revocation order is "reasonably necessary for the adjudication of matters arising before [the term's] expiration."

*United States v. Garrett*, 253 F.3d 443, 446 (9th Cir. 2001) (alteration in original).

Madden's supervised-release violation arises from different circumstances than the conviction that originally brought him before the district court in this case. Before addressing the merits of Madden's claim on appeal, we must therefore briefly address the factual background underlying his supervised-release violation.

In December of 1998, Madden was convicted of bank fraud and sentenced to 14 months of imprisonment followed by three years of supervised release. His term of supervised release began on November 24, 2000. Between 2001 and 2005, Madden was indicted a number of times in both state and federal proceedings for various gun- and drug-related crimes. He was also in federal custody in Baltimore for over two years of that time because of a trial in the United States District Court for the District of Maryland based on a three-count indictment for conspiracy to import heroin, importation of heroin, and distribution of heroin. Madden argues that his term of supervised release was not tolled during this period in custody and thus expired in November of 2003. The government, on the other hand, contends that his supervised release *was* tolled and that the term therefore continued until February of 2005. We have no need to resolve this tolling issue, however,

because both parties agree that a warrant was issued on the basis of a supervised-release violation in September of 2002.

### 2.     *Jurisdiction to sanction Madden under 18 U.S.C. § 3583(i)*

Madden makes three arguments to support his claim that the district court lacked jurisdiction under 18 U.S.C. § 3583(i) to sanction him based on his prior supervised-release violation. One of his arguments attacks the reasonableness of the delay between the expiration of his supervised-release term and the district court's revocation order, while the other two call into question the validity of the September 2002 warrant under § 3583(i). The parties also disagree about which standard we should apply in reviewing these arguments. We will address each of Madden's arguments, and their appropriate standard of review, in turn.

At the outset, Madden argues that the district court did not have jurisdiction to sentence him for his prior supervised-release violation because the hearing was not brought within a reasonable period of time. The government contends that Madden did not preserve his unreasonable-delay objection below and that he is therefore limited to plain-error review on appeal. Madden does not specifically rebut this claim; rather, he simply argues that all of his claims should be reviewed de novo. The record demonstrates that although Madden did not articulate his unreasonable-delay claim as such, he did object to the district court's jurisdiction over his supervised-release violation on the basis that approximately four years had elapsed between the time that he was taken into custody in Baltimore and the hearing adjudicating his supervised-release violation. We need not resolve this dispute, however, because Madden's claim cannot succeed under either standard.

Madden claims that "there was no reason" for the delay between the warrant issued in September 2002 and the hearing held by the district court in September of 2005. But this argument ignores overwhelming evidence in the record that provides ample reason for the delay. Indeed, between the time that Madden's supervised-release term began in late 2000 and the district court's sentencing hearing in this case in 2005, Madden was either in government custody or being brought up on charges almost constantly. Madden was in federal custody in Baltimore for more than two of the four years in question because of multiple proceedings relating to his trial. The charges being tried in that case, moreover, arose out of the same alleged incidents of heroin importation that eventually led to his guilty plea in this case. All of these charged events allegedly took place between March and November of 2001, in the middle of Madden's supervised-release period.

The Second Circuit, in *United States v. Ramos*, 401 F.3d 111, 117-18 (2d Cir. 2005), concluded that a two-year delay between the execution of the warrant for a defendant's supervised-release violation and the adjudication of that violation in federal court was both "reasonably necessary" under § 3583(i) and did not violate his due process rights. Part of the delay in that case arose because Ramos was charged with a felony in state court, and the federal authorities waited to execute the warrant for his supervised-release violation until the case had been adjudicated. *Id.* at 117. The *Ramos* court concluded that "the period of time during which the state was adjudicating the state criminal charges obviously and easily falls within the scope of reasonable necessity provided by § 3583(i)." *Id.*

Here, as in *Ramos*, the delay between the execution of the September 2002 warrant and the hearing in which Madden was sentenced for his violation of supervised release was caused by court proceedings, which in turn were caused by Madden's own conduct. And, just as in *Ramos*, the outcome of these proceedings directly related to whether Madden had actually violated the terms of his supervised release. Both the trial that took place in Baltimore and the underlying conviction in this case stemmed from allegations of conduct that took place during 2001, which marked the early part of Madden's term of supervised release. The outcome in those cases, in particular an adjudication of whether Madden had committed crimes during his supervised-release term, was

therefore "plainly relevant to the federal determination of whether or not" Madden had actually violated the conditions of his supervised release. *Id.*

Moreover, although Madden claims that the delay in his case was unreasonable, he has not demonstrated that he suffered any prejudice as a result of that delay. This court has previously rejected a similar challenge to a delayed hearing on supervised release on the basis that the defendant could not show how the delay prejudiced him:

> Defendant made no proffer of evidence that would tend to prove he did not commit [the alleged supervised-release] violations, nor did he then, or on appeal, maintain that the delay prevented his introducing such proof. He admitted he had violated two of the conditions of his supervised release. He cites no authority for the proposition that a delay . . . either implicates due process or violates the provisions of 18 U.S.C.A. § 3583(i).

*United States v. Throneburg*, 87 F.3d 851, 853 (6th Cir. 1996).

Madden does not claim that the delay between the issuance of the warrant and the sentencing hearing rose to the level of violating his constitutional right to due process. Nor does he attempt to demonstrate that the delay in any way hampered his ability to defend against the allegations of a supervised-release violation. Indeed, like Throneburg, Madden admitted to the district court that he violated the conditions of his supervised release. For these reasons, we cannot conclude under either de novo or plain-error review that the delay in Madden's case was unreasonable under § 3583(i).

Madden further argues that "there was only one warrant or summons which the district court should have looked at" in determining how long Madden's supervised release actually ran, so that the district court erred in concluding that it had jurisdiction under § 3583(i) to impose sanctions. This claim, however, is without merit. True enough, the district court discussed a number of different warrants and summonses that may have impacted when Madden's supervised-release term actually expired. But as Madden himself argues, the September 2002 warrant was "issued based upon an allegation of a violation" of supervised release. There is no dispute that the September 2002 warrant was issued before his supervised-release term expired, and it therefore met the requirements set out in § 3583(i).

Furthermore, the government is correct in pointing out that "the question of 'tolling' is simply not at issue here." The plain language of § 3583(i) states that a court retains the power to impose a sanction for a supervised release violation "beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration." Whether Madden's supervised-release term expired in November of 2003 or February of 2005 is thus irrelevant, because as long as the warrant was issued before its expiration—and both parties agree that the September 2002 warrant was—the district court retained jurisdiction to impose a sanction. *See United States v. Naranjo*, 259 F.3d 379, 383 (5th Cir. 2001) (noting that the issuance of a warrant before the expiration of a supervised-release term preserves the court's post-term jurisdiction).

Madden's final attack on the district court's jurisdiction is based upon his argument that the September 2002 warrant was invalid because it was not "based on probable cause supported by oath or affirmation." He therefore contends that the district court lacked jurisdiction to sanction him under § 3583(i). Because he did not raise this objection in the district court, we review this claim under the plain-error standard of review. *See* Fed. R. Crim. P. 52(b); *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004) ("When an appellant fails to object to an error in the district court, this Court reviews for plain error.").

At the outset, we note that the plain language of the statute does not require that a warrant or summons relating to a supervised-release violation be supported by probable cause. *See* 18 U.S.C. § 3583(i) (requiring only that "a warrant or summons has been issued on the basis of an allegation of such a violation"). There is a dispute among our sister circuits over whether § 3583(i) nevertheless contains an implicit sworn-facts requirement. *Compare United States v. Vargas-Amaya*, 389 F.3d 901, 904 (9th Cir. 2004) (concluding that, by its terms, a "warrant" is a "document that is based on probable cause and supported by sworn facts"), *with United States v. Garcia-Avalino*, 444 F.3d 444, 445 (5th Cir. 2006) (rejecting the notion "that there is an implicit sworn-facts requirement embedded in the very meaning of the word 'warrant' as a legal term," and concluding that the district court had jurisdiction over the defendant under § 3583(i) regardless of whether the warrant was supported by sworn facts). We have no need to resolve this question in the present case because, even if we were to decide that the district court's reliance on a warrant not supported by probable cause constituted an error, the very existence of a reasonable disagreement on this point precludes the conclusion that the error was plain. *See United States v. Alexander*, 217 F. App'x 417, 422 (6th Cir. 2007) (citing the "conflicting precedents" among the circuits to conclude that an error was not plain); *United States v. Williams*, 53 F.3d 769, 772 (6th Cir. 1995) (concluding that a "circuit split precludes a finding of plain error").

The government also points out that the September 2002 warrant on which the district court relied was issued because of Madden's December 2001 indictment in the District of Maryland. Because the government necessarily had to demonstrate probable cause in order for the grand jury to issue the indictment, it argues that the warrant was also based on probable cause. Whether or not this reasoning is ultimately persuasive, it does provide further support for our conclusion that Madden has not shown plain error in the district court's reliance on the September 2002 warrant.

Because we find no plain error, we need not reach the other two prongs of the plain-error standard. *See United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (requiring, after a finding that an error was "obvious or clear," a determination of whether the error "affected defendant's substantial rights" and "seriously affected the fairness, integrity, or public reputation of the judicial proceedings"). We therefore conclude that the district court had jurisdiction under § 3583(i) to sanction Madden for his admitted supervised-release violation.

## B.     Reasonableness of Brown's sentence

### 1.     *Standard of review*

The remaining issue to be resolved on this appeal concerns the sentence imposed on Brown. We review a district court's sentencing determination for reasonableness, which has both a procedural and a substantive component. *See Gall v. United States*, 128 S. Ct. 586, 597 (2007); *United States v. Thomas*, 498 F.3d 336, 339 (6th Cir. 2007). Thus, when reviewing a district court's sentencing determination, we "first ensure that the district court committed no significant procedural error, such as . . . failing to consider the § 3553(a) factors . . . or failing to adequately explain the chosen sentence." *Gall*, 128 S. Ct. at 597.

"Assuming that the district court's sentencing decision is procedurally sound, [we] should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* District courts are charged with imposing "a sentence sufficient, but not greater than necessary" to fulfill the purposes of sentencing in § 3553(a)(2). *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006) (internal quotation marks omitted). "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 128 S. Ct. at 597. Moreover, a sentence that falls within a properly

calculated Guidelines range is accorded a rebuttable presumption of reasonableness. *United States v. Heriot*, 496 F.3d 601, 608 (6th Cir. 2007).

### 2.          *The terminology of Brown's request for a reduced sentence*

At the outset, we note that Brown has not clearly articulated whether she is seeking a variance or a Guidelines-based departure. Part of the confusion on this point undoubtedly arises from the fact that the line is not always crystal clear between a non-Guidelines departure, which we generally call a variance, and a Guidelines-based departure. *Cf. United States v. McBride*, 434 F.3d 470, 476 n.5 (6th Cir. 2006) (describing Guidelines departures as "Chapter 5 departures" and non-Guidelines departures as "sentences lower than the Guidelines recommendation based on section 3553(a) factors"). This fuzziness is particularly evident where, as here, the defendant seeks a "downward departure" under USSG § 5K2.0. Section 5K2.0 explicitly permits sentencing courts to impose a sentence *outside* of the Guidelines range for circumstances of a kind or degree "not adequately taken into consideration by the Sentencing Commission." To call a departure under § 5K2.0 a non-Guidelines departure or a variance thus only adds to the confusion.

The importance of the terminology used to describe Brown's request for a reduced sentence is underscored by the fact that this court has previously held that a district court's decision to deny a downward departure is unreviewable unless the lower court incorrectly believed that it lacked the authority to grant such a departure. *See, e.g.*, *United States v. Gale*, 468 F.3d 929, 937 (6th Cir. 2006) (citing *United States v. Puckett*, 422 F.3d 340, 346 (6th Cir. 2005)). This court has also explained, however, that the limitation on appellate review of a denial of a downward departure does not alter this court's ability to "review the overall reasonableness of sentences." *McBride*, 434 F.3d at 474. The tension created by these competing principles is exacerbated in the present case due to the fact that Brown repeatedly contends that her sentence is unreasonable because the district court did not appropriately consider the § 3553(a) factors when it failed to impose a sentence below the applicable Guidelines range, yet for the most part she frames her argument in terms of a "downward departure" under § 5K2.0.

A review of both Brown's motion before the district court and her brief on appeal demonstrates that she wanted the district court to consider her "unique, personal circumstances" and to "fashion an alternative sentence without prison, or a sentence of prison as short as possible." She has consistently claimed that her mental and emotional conditions, her family responsibilities, the aberrant nature of her behavior, and her minimal role in the offense all militate in favor of a sentence below the applicable Guidelines range. Thus, although she does not specifically discuss how the factors set forth in 18 U.S.C. § 3553(a) support her request for a reduced sentence, she does refer in passing to a "variance" sentence and to the need for her sentence to comport with the § 3553(a) factors. The underlying basis of her arguments for leniency, moreover, match up precisely with those factors. *See, e.g.*, § 3553(a)(1) (nature and circumstances of the offense and history and characteristics of the defendant); § 3553(a)(2)(A) (need for the sentence imposed to reflect the seriousness of the offense).

For these reasons, we will put aside Brown's confusing language and treat her claim as a request for a below-Guidelines variance based on the § 3553(a) factors. Brown argues on appeal that the district court erred in sentencing her to 37 months' imprisonment. Although she does not explicitly say so, her claim is essentially that the sentence is both procedurally and substantively unreasonable.

### 3.          *Procedural reasonableness*

Brown contends that the district court "failed to adequately address" her arguments for a reduced sentence. But the Supreme Court's recent decision in *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007), makes clear that a district court may exercise discretion in determining how much

explanation is necessary, and that "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." A district judge need only "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.*

In the present case, the district court explicitly referred to a number of the § 3553(a) factors in explaining the sentence it imposed. Throughout the course of this explanation, the court specifically responded to Brown's mitigating arguments regarding both her mental state and her family circumstances. The court noted that "she does have two children and has a support system through . . . her personal relationships." It also acknowledged that "she struggles with depression, although she has rejected treatment." The court also said, however, that it was concerned about the fact that Brown had continued to use drugs during her pregnancy. During the discussion of how the § 3553(a) factors should apply to Brown's case, the court explained that given the nature of the drug offense and the fact that Brown had absconded before sentencing, the Guidelines-based reductions for acceptance of responsibility and substantial assistance were sufficient to provide a fair sentence for Brown.

The broader "context and record" of the sentencing hearing provide additional support for the conclusion that the court adequately considered Brown's mitigating arguments. *See Rita*, 127 S. Ct. at 2469. During an earlier part of the hearing, for example, the district court engaged in an extended discussion with both attorneys about whether Brown should receive a reduction for acceptance of responsibility. The court listened to both Brown and her attorney discuss her family, her pregnancy, and her psychological problems. In imposing the sentence, the court demonstrated that it had considered these issues by ordering that she enter a birthing program and recommending that she be permitted to participate in a residential drug-treatment program while incarcerated.

The district court, to be sure, did not specifically address each of the reasons for a lower sentence that Brown set forth in her motion. Although the court noted in its discussion of the § 3553(a) factors that Brown had "no prior criminal convictions," it did not acknowledge that Brown had requested a lower sentence because her behavior in this case represented a "marked deviation from an otherwise law-abiding life." Furthermore, the court did not at any point discuss Brown's contention that she should receive a reduced sentence because of her "diminished capacity."

But a sentencing judge is not required to explicitly address every mitigating argument that a defendant makes, particularly when those arguments are raised only in passing. *See Rita*, 127 S. Ct. at 2468; *see also United States v. Liou*, 491 F.3d 334, 339 n.4 (6th Cir. 2007) (rejecting the notion that a district court is required to address "each argument, whether frivolous or non-frivolous, that a defendant even *arguably* raises in support of a lower sentence" (emphasis in original)). Brown herself conceded that the court did "not have before it a report from a qualified mental health professional" in support of her diminished-capacity argument. *Cf. United States v. McGee*, 494 F.3d 551, 558 (6th Cir. 2007) ("[I]n most cases, if there is no factual basis for a defendant's argument, the district court need not specifically address the argument."). We are thus not persuaded that the district court committed a "significant procedural error" by failing to explicitly address this claim. *See Gall v. United States*, 128 S. Ct. 586, 597 (2007).

Although we are somewhat more troubled by the district court's failure to mention Brown's argument for a reduced sentence based on her alleged "aberrant behavior," we remain unconvinced that this omission rendered the court's sentencing determination procedurally unreasonable. Even where, as here, the defendant presents an arguably nonfrivolous reason for imposing a sentence below the Guidelines range, the judge is not always required to address the specific argument. *See Rita*, 127 S. Ct. at 2468 (explaining that a judge need not address every single argument advanced by a defendant, leaving how much to say in large part to "the judge's own professional judgment").

Of course, as noted above, the sentencing judge must still "satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* This court has thus vacated a sentence where "[t]he record ma[de] clear that the district court considered the applicable Guidelines range, but not much else." *United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007). In *Thomas*, the defendant had made a variety of arguments in a sentencing memorandum about how § 3553(a) should be applied to his case. *Id.* at 341. "[B]ut those arguments went unmentioned and unaddressed, save the general statement by the district court that it had received, read, and understood the sentencing memorandum." *Id.* This court concluded that Thomas's sentence was procedurally unreasonable because the context and record did not make clear why the district court had imposed the sentence it did. *Id.* (citing *Liou*, 491 F.3d at 339 n.4 (quoting *Rita*, 127 S. Ct. at 2469)).

In contrast, the sentencing judge in this case repeatedly demonstrated that he was familiar with Brown's background and personal history, including her minimal role in the offense and her lack of a criminal history. His explanation of the sentence imposed makes clear that he was not persuaded that these circumstances provided a reason for choosing a sentence below the Guidelines range. We certainly recognize, as did the Supreme Court in *Rita*, "that the judge might have said more. He might have added explicitly . . . that he found that [Brown's] personal circumstances here were simply not different enough to warrant a different sentence. But context and the record make clear that this, or similar, reasoning, underlies the judge's conclusion." 127 S. Ct. at 2469. The present case is therefore distinguishable from this court's decision in *Thomas*.

Finally, we acknowledge that the district court's actual ruling on Brown's motion was brief and somewhat opaque. The district court, after explaining the sentence that it had chosen to impose, asked the parties if there was "anything else." Brown's counsel replied by saying: "I think, judge, you would need to make a finding regarding my motion for downward departure." The following is the entirety of the district court's response:

> I intend on doing that. I will address all your issues. I will deny the motion for downward departure. I believe the court has been, I think I've given her the consideration as it relates for acceptance of responsibility. I think in that view that ruling was giving her more than fair consideration, and that will be the court's order.

Read in isolation, this response would undoubtedly be inadequate. But, as previously noted, we review a district court's sentencing determination by looking to the entire context and record. *See Liou*, 491 F.3d at 339 n.4 (quoting *Rita*, 127 S. Ct. at 2469). The district court, by this point in the hearing, had already addressed the majority of Brown's arguments for a lower sentence. Even if the court's explanation was imperfect, the record as a whole shows that the court adequately considered Brown's mitigating arguments and provided a reasoned basis for the sentence that it imposed. We therefore conclude that the sentence was procedurally reasonable.

### 4.     *Substantive reasonableness*

Because we have determined that Brown's sentence is procedurally reasonable, we will now proceed to evaluate its substantive reasonableness. *See Gall v. United States*, 128 S. Ct. 586, 597 (2007). Brown claims, as she did before the district court, that her mental and emotional conditions, her family responsibility in connection with her pregnancy, and the aberrant, one-time nature of her criminal behavior militate in favor of a below-Guidelines sentence. In her sentencing memorandum, she contended that she should receive "an alternative sentence without prison, or a sentence of prison as short as possible." She reiterates on appeal that her "unique, personal circumstances" require us to conclude that the 37-month term of imprisonment imposed by the district court is unreasonable.

We agree with the government that Brown has failed to overcome the presumption of reasonableness accorded to sentences falling within the Guidelines range. The district court properly acknowledged that the Guidelines are advisory, discussed the § 3553(a) factors, and explained its reasons for imposing a sentence within the Guidelines range. There is nothing in the record to suggest that the district court selected the sentence arbitrarily or relied on impermissible factors. *See United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006). Brown's sentence is therefore presumptively reasonable. *See, e.g.*, *United States v. Heriot*, 496 F.3d 601, 608 (6th Cir. 2007).

The fact that the district court denied Brown's motion for a reduced sentence, moreover, does not alter our conclusion. We are mindful of the Supreme Court's recent reminder that district courts are entitled to deference in determining an appropriate sentence. *See Gall*, 128 S. Ct. at 597. This is because "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Id.* (internal quotation marks omitted).

Indeed, a review of the record in this case suggests that the court simply disagreed with Brown about the appropriate weight to accord the mitigating factors that she raised at sentencing and now on appeal. The court noted, for example, that Brown had "rejected treatment" for her depression. As the government points out, Brown's rejection of psychological treatment tends to undermine the claim that her mental condition is serious enough to merit a more lenient sentence. Nor do her family circumstances necessarily provide grounds for imposing a sentence outside of the Guidelines range. *See United States v. Cage*, 458 F.3d 537, 544 (6th Cir. 2006) (affirming a Guidelines-range sentence despite the defendant's argument that she deserved a downward departure because of her young children and other family circumstances).

Brown's concession that most or all of her mitigating arguments are not supported by the Sentencing Guidelines further bolsters our conclusion that she has not rebutted the presumption of reasonableness. This presumption exists precisely because a sentence that both the Sentencing Commission and the sentencing judge agree on "'significantly increases the likelihood that the sentence is a reasonable one.'" *United States v. Liou*, 491 F.3d 334, 339 (6th Cir. 2007) (quoting *Rita*, 127 S. Ct. at 2463). Not only did the district court in the present case impose a within-Guidelines sentence, but it adopted a three-level reduction for acceptance of responsibility despite the fact that Brown had been a fugitive for a year between the time that she pled guilty and was sentenced. We simply cannot say that the district court's sentence was substantively unreasonable under these circumstances.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the district court's judgment in both cases.

---

**CONCURRING IN CASE NO. 05-4304, DISSENTING IN CASE NO. 06-3736**

---

KAREN NELSON MOORE, Circuit Judge, concurring in 05-4304 and dissenting in 06-3736. I agree with the majority that the district court had jurisdiction under 18 U.S.C. § 3583(i) to sanction Tyrone Madden for his admitted supervised-release violation. However, because the district court did not adequately explain why it rejected Diana Blaine Brown's ("Brown") arguments seeking a lower sentence, I cannot find Brown's sentence reasonable. Accordingly, I respectfully dissent and would remand Brown's case for resentencing.

The district court committed procedural error in this case because the court failed to mention or address one of Brown's central arguments for a lower sentence, namely, that her offense represented "aberrant behavior" and "truly was a marked deviation from an otherwise law-abiding life." J.A. at 116-17 (Sent. Mem. at 7-8). Even when Brown's counsel specifically requested that the court rule on Brown's motion, the court's curt response ignored every argument raised in the motion. Instead, the court denied the motion because the court had already given Brown a separate Guidelines-based downward adjustment for acceptance of responsibility, an issue that Brown's motion did not even mention. Even the majority recognizes that the district court's failure to mention Brown's aberrant-behavior argument during the hearing is "troubl[ing]," Maj. Op. at 8, and that the court's ruling on Brown's motion was "imperfect." Maj. Op. at 9. Applying a downward adjustment in calculating a defendant's Guidelines range does not excuse a sentencing judge from addressing the defendant's other arguments for a lower sentence. Indeed, such an irrelevant and non-responsive answer fails to "set forth enough to satisfy the appellate court that [the district court] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007). Accordingly, I would remand so that the district court can consider Brown's arguments and explain the rationale for whatever sentence the district court selects. I respectfully dissent.