**NOT RECOMMENDED FOR PUBLICATION**
File Name: 09a0038n.06
Filed: January 16, 2009

**No. 07-4093**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| WILLIAM LEE QUINN, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: RYAN, SILER, and GRIFFIN, Circuit Judges.

**SILER**, Circuit Judge.  Defendant William Lee Quinn appeals his sentence of 70 months imprisonment following his plea of guilty to attempted bank larceny.  He argues that the district court (1) erred by calculating an advisory Guidelines range based on facts not admitted by him or proven to a jury beyond a reasonable doubt and (2) miscalculated the Guidelines range, misapplying the economic reality test when determining the amount of "intended loss," so that the resulting sentence was unreasonable.  For the following reasons, we **AFFIRM**.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

In 2007, Quinn entered a plea of guilty to Count 1 of the Superseding Information charging him with attempting to enter a bank with the intent to commit a felony by taking over $1,000 (*i.e.*, attempted bank larceny) in violation of 18 U.S.C. § 2113(a).  In the plea agreement, the parties agreed that Quinn attempted to enter the Northside Bank and Trust Company in Cincinnati, Ohio,

with the intent to steal $4,000,000 in 2006. Quinn recruited co-defendant Lisa Moss to drive him from Indianapolis, Indiana, to Cincinnati. Then, a government cooperating witness brought him a bag to carry the money and drove him to the bank. The FBI took Quinn into custody as he was approaching the bank.

In sentencing Quinn, the district court calculated the advisory Guidelines range of 70 to 87 months two ways that yielded identical results: (1) using an intended loss amount of $1,390,794 (the amount on hand in the bank at the time of the attempted bank larceny) and (2) using the stipulated intended loss amount of $4,000,000 and departing downward to a range that reflected a loss amount of $1,390,794 because otherwise the offense level would overstate the seriousness of the offense. It then considered the other § 3553(a) factors and imposed a sentence of 70 months imprisonment, within the advisory Guidelines range.

## II. STANDARD OF REVIEW

We review the constitutionality of sentences de novo, the district court's calculation of the amount of loss for clear error, and the reasonableness of the sentence for abuse of discretion. *United States v. Conatser*, 514 F.3d 508, 537 (6th Cir. 2008); *United States v. Sexton*, 512 F.3d 326, 331 (6th Cir. 2008); *United States v. Blackwell*, 459 F.3d 739, 772 (6th Cir. 2006).

## III. DISCUSSION

**(1) Using facts not admitted by Quinn or proven to a jury beyond a reasonable doubt**

Quinn argues that the district court violated his Sixth Amendment right to a trial by jury because (1) the Government did not establish the amount of "intended loss" and (2) the district court

should not have used the $1,390,794 of cash allegedly on hand at the bank as the loss amount because the amount was not agreed to by Quinn or found by a jury beyond a reasonable doubt.

The Government met its burden of establishing the amount of "intended loss." In the plea agreement, the parties stipulated and agreed that the "intended loss" was $4,000,000. The Government read this stipulation to the district court at the change of plea hearing, and Quinn did not challenge this stipulation. Then, the presentence investigation report ("PSR") included the stipulated "intended loss" amount of $4,000,000, and at sentencing, the district court adopted the factual statements in the PSR.

We have squarely rejected the argument that after *United States v. Booker*, 543 U.S. 220 (2005), and *Blakely v. Washington*, 542 U.S. 296 (2004), all facts that increase the severity of a sentence must be admitted by the defendant or found by a jury beyond a reasonable doubt. *United States v. Sexton*, 512 F.3d 326, 329-30 (6th Cir. 2008). "Where, as here, the district court recognized the advisory nature of the guidelines, the increase in a defendant's sentence based on facts not admitted by the defendant or proven to a jury beyond a reasonable doubt does not violate the Sixth Amendment." *United States v. Conatser*, 514 F.3d 508, 527 (2008). The district court properly used the $1,390,794 of cash in the bank to come up with a more appropriate sentence. Although not included in the PSR, the probation officer called the bank to ascertain the amount of funds on hand at the time of the attempted robbery. This determination inured to the benefit of Quinn at sentencing.

Further, by departing downward to the Guidelines range for an "intended loss" of $1,390,794, the district court did not increase the sentence beyond the maximum authorized. *United States v. Jones*, 417 F.3d 547, 551 (6th Cir. 2005) ("A downward departure . . . results in a discretionarily

*reduced* sentence, not one that is mandatorily increased beyond the maximum authorized by a jury verdict or guilty plea."). "Since defendants were sentenced under an advisory Guidelines scheme, the maximum statutory penalty that the district court could impose was determined by the statute of conviction, rather than by a Guidelines range calculated using only jury findings." *Sexton*, 512 F.3d at 330. The maximum statutory penalty for a violation of 18 U.S.C. § 2113(a) is 240 months, well above the sentence that Quinn received.

**(2) The economic reality test**

The district court's determination that the intended loss was $4,000,000, followed by a downward departure because the offense level overstated the seriousness of the offense, was not clearly erroneous.[1] The offense level for larceny depends on the amount of actual or intended loss. *United States v. McBride*, 362 F.3d 360, 373 (6th Cir. 2004) (citing USSG § 2B1.1). "'Intended loss' (I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (*e.g.*, as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)." USSG § 2B1.1cmt. n.3(A)(ii). The definition of intended loss may reach unlikely or impossible losses, unless the offender's mistaken belief of the facts is "so irrational that the words 'intended loss' can no longer reasonably apply." *McBride*, 362 F.3d at 374. The stipulated intended loss amount of $4,000,000 was proper even though Quinn could never have caused this level of loss. His reliance

---

[1]Any sentencing error arising from the alternate determination that the "intended loss" was $1,390,794 is harmless because the two determinations yielded identical results. *See, e.g., United States v. Christopher*, 415 F.3d 590, 593 (6th Cir. 2005).

on a government cooperating witness, lack of familiarity with the specific bank, and inability to physically carry $4,000,000 do not trigger the requisite level of irrationality.

However, if the advisory Guidelines offense level substantially overstates the seriousness of the offense, a downward departure may be warranted under the "economic reality principle." *McBride*, 362 F.3d at 375 ("Where a defendant devises an ambitious scheme obviously doomed to fail and which causes little or no actual loss, it may be unfair to sentence based on the intended (but highly improbable) loss determination from the [§ 2B1.1] table."). The district court determined that such a downward departure was necessary because the "economic reality" was that there was only $1,390,794 in the bank at the time of the attempted offense. It used this amount to calculate a more appropriate advisory guidelines range.

To the extent that Quinn challenges the extent of the district court's downward departure, his argument is foreclosed. *See Jones v. United States*, 417 F.3d 547, 551 n.3 (6th Cir. 2005). We cannot review a district court's decision to deny a downward departure or on the proper extent of the downward departure.

**(3) Reasonableness**

Even though the district court has complete discretion regarding downward departures, "a defendant who received a downward departure . . . is free to argue that the sentence from which the district court departed was unreasonable." *Jones*, 417 F.3d at 551 n. 3. We "must review . . . for reasonableness, the district court's consideration of the Guideline sentence in the context of the other section 3553(a) factors," including its decision "not to impose a lower sentence based on the economic reality principle." *McBride*, 434 F.3d at 477.

Reasonableness review has procedural and substantive components. *United States v. Madden*, 515 F.3d 601, 609 (6th Cir. 2008). If the district court commits no significant procedural errors during sentencing, "such as failing to consider the § 3553(a) factors . . . or failing to adequately explain the chosen sentence," then we review the substantive reasonableness of the sentence using an abuse of discretion standard. *Id.* "[A] sentence that falls within a properly calculated Guidelines range is accorded a rebuttable presumption of reasonableness." *Id.*

The sentence imposed was reasonable. As discussed above, the district court properly considered facts not admitted by Quinn or proven to a jury beyond a reasonable doubt and properly calculated the advisory Guidelines range of 70 to 87 months imprisonment using the stipulated intended loss amount of $4,000,000 and exercising its discretion to depart downward based upon the economic reality principle because the offense level substantially overstated the seriousness of the offense. It then properly considered the other § 3553(a) factors and did not abuse its discretion by imposing a sentence within the advisory range of 70 months imprisonment. It adequately explained that a sentence within the calculated range was appropriate given the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a)(1).

**AFFIRMED.**