NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0314n.06
Filed: May 1, 2009

**Nos. 07-5791 and 07-5798**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA (07-5791) | ) | |
| | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JIMMY ELLIOTT, JR., | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
|     Defendant-Appellant. | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| _____ | ) | |
| | ) | |
| UNITED STATES OF AMERICA (07-5798) | ) | |
| | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JIMMY EARL ELLIOTT, also known as | ) | |
| Jimmy Elliott, Sr., | ) | |
| | ) | |
|     Defendant-Appellant. | ) | |

Before: NORRIS, COOK, and GRIFFIN, Circuit Judges.

COOK, Circuit Judge.  Jimmy Elliot, Jr. ("Elliot Junior") and Jimmy Elliot, Sr. ("Elliot Senior"), pursuant to plea agreements, pleaded guilty to conspiring to possess marijuana with an intent to distribute.  They appeal their sentences and we AFFIRM.

Nos. 07-5791 and 07-5798
*United States v. Jimmy Elliott, Jr. and Jimmy Earl Elliott, aka Jimmy Elliott, Sr.*

I.

Elliot Senior, Elliot Junior, and at least three others conspired to distribute marijuana. This began in 2003, when the Elliots located a marijuana supply source in Chicago. To transport the marijuana from Chicago to Kentucky, they employed load drivers, including Donnie Burke, who eventually became their primary driver. The Elliots instructed Burke on the details of moving the marijuana and paid him $500 per load. This arrangement spawned, in the district court's words, an "extensive drug operation"—an apt description given that Elliot Senior distributed approximately 2000-to-2100 pounds of marijuana. His son surpassed that, distributing approximately 3000 pounds. The Presentence Report tells us that Elliot Senior withdrew from the conspiracy "[i]n mid-2005, when the Chicago marijuana source was not longer viable." Elliot Junior persisted, obtaining marijuana from suppliers in Florida and Texas.

In September 2005, police monitored Elliot Junior as he sold marijuana from a garage that the Elliots owned. When the police executed a search warrant there, they discovered 13 pounds of marijuana, two shotguns, and a pistol. Police also searched Elliot Junior's residence, finding a pistol near a small amount of marijuana. Rather than arresting Elliot Junior, they enlisted his cooperation in a related drug investigation. Elliot Junior then left the drug business, but only temporarily; he returned to selling marijuana the following year, and federal grand juries indicted both defendants.

-2-

A.  Elliot Junior's Sentence

At sentencing, the district court enhanced Elliot Junior's offense level by two for possessing a dangerous weapon, U.S.S.G. § 2D1.1(b)(1), enhanced it by four for serving as a leader of the conspiracy, *id.* § 3B 1.1(a), and reduced it by three for accepting responsibility, *id.* § 3E 1.1.  The resulting adjusted offense level of 35 and criminal history category of I recommended a sentence between 168 and 210 months' imprisonment. Considering the appropriateness of that range, the district court stated: "Based upon the defendant's role in this activity and his continuing in the activity after the initial arrest, the starting point for the court would be 205 months. Now, that's toward the upper end of the Guidelines range, and I think under the circumstances that is certainly warranted."  Having settled on a 205-month "starting point," the court went on to grant a forty-five month downward departure for substantial assistance to the authorities, *id.* § 5K1.1.  The district court then sentenced the defendant to 160 months' imprisonment.

B.  Elliot Senior's Sentence

As for Elliot Senior, the district court imposed a sentence of 202 months' imprisonment. This accounted for two state-court convictions: one related to a June 29, 1993 cocaine sale, and one to a July 1, 1993 marijuana sale, both made to the same undercover police officer.  The district court viewed these convictions as unrelated for career offender purposes and applied an enhancement under U.S.S.G. § 4B 1.1(a).  This yielded a 262-to-327-months Guidelines range.  The district court then commented that "my starting point will be in the guidelines, but it will be at the bottom of the

guideline range." The district court next sustained a § 5K 1.1 motion and departed downward by 60 months. Finally, the court determined that the 18 U.S.C. § 3553(a) factors warranted a Guidelines-based sentence of 202 months' imprisonment.

Both defendants timely appealed.

## II.

Elliot Junior argues that the district court violated procedural reasonableness when it stated that he continued selling marijuana after his arrest. In fact, he continued selling after the police executed a search warrant at his garage and home, an incident without an arrest. According to Elliot Junior, calling the search-warrant execution an arrest means that "the district court based its entire sentencing on a fact unsupported in the record." We disagree. Elliot Junior exaggerates the court's slip of the tongue.

Procedural unreasonableness results when the district court "select[s] a sentence based on clearly erroneous facts." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). Elliot Junior's challenge centers on the following statement:

> I will note, and the thing that really concerns me, is that after the defendant was originally arrested in this matter, he certainly should have stopped his involvement, his criminal activity at that time, but he continued in a criminal enterprise. Now, that certainty indicated to me, number one, that he does not have respect for the law, he knew what he was doing was wrong and he continued in his operations. Also, it goes to the issue of deterrence, what is necessary to deter someone from in engaging in

that type of conduct, and what is necessary to protect the public from any future crime of this defendant.

Even though the court misspoke by referring to the garage encounter as an arrest, procedural unreasonableness did not result because the district court did not "select[] a sentence *based on*" the arrest-versus-search-warrant distinction. *See Gall*, 128 S. Ct. at 597 (emphasis added). The district court essentially worried about Junior's cavalier attitude toward the law: "he knew what he was doing was wrong and he continued in his operations." Given this concern, the arrest-versus-search-warrant terminology did not matter. The police—whether arresting or searching—gave Junior fair warning that his activities violated the law. Yet he flouted the law by returning to the drug business. This, in the district court's estimation, signaled a need for the sentence to both deter and promote respect for the law—regardless of the terminology used to label Junior's warning run-in with law enforcement. The "arrest" label did not affect the district court's sentencing judgment; Elliot Junior's sentence is not "based on clearly erroneous facts," *Gall*, 128 S. Ct. at 597, and survives procedural-reasonableness review.

III.

Elliot Junior questions the district court's decision to enhance his Guidelines range for serving as "an organizer or leader of a criminal activity that involved five or more participants." U.S.S.G. § 3B 1.1(a). Elliot Junior admits that his criminal activity involved five people, but argues

that the extent of his leadership does not justify a § 3B 1.1(a) enhancement and, even if it does, he argues for less than the full four-level enhancement.

We review the district court's factual findings for clear error, *United States v. Walls*, 546 F.3d 728, 735 (6th Cir. 2008), which requires "the definite and firm conviction that a mistake has been made." *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008). As for the district court's § 3B 1.1 legal conclusions, this court has not settled on the appropriate standard—de novo review or, in light of *Buford v. United States*, 532 U.S. 59 (2001), something more deferential. *United States v. Young*, 553 F.3d 1035, 1052 (6th Cir. 2009) (noting "confusion within this circuit concerning the standard of review that should be applied to a district court's decision to impose a leadership enhancement under § 3B1.1); *see also United States v. Ashiq*, No. 07-5601, 2009 WL 140495, at *2 (6th Cir. January 21, 2009) (same). We bypass settling the standard of review because even under de novo review Elliot Junior's challenge fails.

Enhancing under U.S.S.G. § 3B1.1(a) involves weighing the following factors:

> [T]he exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, app. n.4; *see also Jeross*, 521 F.3d at 579. Also, "[t]he standard applied to sentencing factors is preponderance of the evidence." *Id*. (quoting *United States v. Garcia*, 19 F.3d 1123, 1125 (6th Cir.1994)).

Applying these principles here, we begin with the last factor—"the degree of control and authority exercised over others." At the sentencing hearing, the AUSA recited certain facts, including that "Mr. Burke was directed by . . . Jimmy Elliot, Jr." Elliot Junior's counsel conceded that Junior controlled Burke: "I would agree with [the AUSA's] statement as to both the guns and the role in the offense. . . . It's our position that the four-level enhancement does not apply under the facts stated by [the AUSA]." Defense counsel, in other words, only disputed the legal significance of the undisputed facts. This admission shows the district court did not err by finding that Elliot Junior controlled Burke. *See United States v. Salas*, 281 F. App'x 496, 500 (6th Cir. 2008) ("It is not error for a court to sentence a defendant on the basis of facts to which the defendant himself admitted.").

As for Junior's legal objection—that he cannot qualify as a conspiracy leader because he controlled just one participant, Burke, and other conspirators also controlled Burke—it lacks merit because "[m]ore than one person can . . . hold a leadership role in the conspiracy for the purposes of the Guidelines enhancement." *United States v. Thompson*, 515 F.3d 556, 562 (6th Cir. 2008) (citing U.S.S.G. § 3B1.1 app. n.4). Furthermore, a "defendant whose sentence is enhanced under § 3B1.1(a) need only supervise or manage *one* of the five or more other participants." *United States*

*v. Baker*, ___ F.3d ___, No. 07-5412, 2009 WL 648909, at *3 (Mar. 16, 2009) (quoting *United States v. Robinson*, 503 F.3d 522, 529 (6th Cir. 2007) (emphasis added)). Thus, analyzing this § 3B1.1(a) factor—the degree of control and authority exercised over others—supports applying the enhancement.

The same is true for other factors. "[T]he degree of participation in planning or organizing the offense" and "the nature and scope of the illegal activity" both point in favor of applying the enhancement. Elliot Junior participated in this conspiracy for three years, distributing 3000 pounds of marijuana secured from multiple sources. And as for the share-of-the-profits factor, the district court tells us that "[i]t also appears that [Elliot Junior] had a least a claim to a larger share of the profits." The district court could infer as much from evidence that Burke received only $500 per load of marijuana delivered.

Whether we review deferentially or de novo, the district court properly applied the leadership enhancement.

Elliot Junior also disputes whether, even if he merits some role-based enhancement, the district court went too far in applying four levels. Section 3B 1.1 also allows for three-level and two-level enhancements depending on the role played. Elliot Junior contends that district court, "with no exercise of human discretion," mechanically applied the entire four-level enhancement when it should have tailored the enhancement to match the extent of his leadership, which he considers more limited than his coconspirators. Junior argues that, for reasons not accounted for by the text of § 3B1.1(a),

the district court should have exercised its discretion to vary from the Guidelines—essentially a greater-than-necessary argument. *See* 18 U.S.C. § 3553(a)(2)(A). We view this challenge as fitting better with this court's substantive-reasonableness review, discussed below.

IV.

Elliot Junior also takes issue with the district court's decision to apply an enhancement because he possessed a firearm in connection with drug trafficking. *See* U.S.S.G. § 2D1.1(b)(1). *United States v. Wheaton*, 517 F.3d 350 (6th Cir. 2008), sets forth the relevant law:

> A district court's determination that the defendant possessed a firearm during a drug offense is a factual finding that this court reviews under the clearly erroneous standard. . . . Before a district court can apply a sentencing enhancement under U.S.S.G. § 2D1.1(b)(1), the government must show by a preponderance of the evidence that the defendant either actually or constructively possessed the weapon. Constructive possession of an item is the ownership, or dominion or control over the item itself, or *dominion over the premises where the item is located*. If the government establishes that the defendant possessed a weapon, a presumption arises that the weapon was connected to the offense. The defendant must then show that it was clearly improbable that the weapon was connected with the crime.

*Id*. at 367 (internal citations and quotation marks omitted).

This burden-shifting framework supports the district court's decision. The record shows that Elliot Junior constructively possessed a firearm—police found a pistol near a small quantity of drugs in Junior's kitchen, a place where he had "dominion." He claims that the gun belonged to his wife, but he offers no evidence, and it is his burden to show that "it was clearly improbable that the weapon

was connected with the crime." *Id*. Moreover, the guns found at the garage—the headquarters of Elliot Junior's drug operation—provide further support for the enhancement. The district court did not clearly err in finding that Elliot Junior possessed those guns while he sold drugs from the garage.

V.

Elliot Junior argues that his family circumstances somehow warranted a lesser sentence, although he does not specify whether he disputes the district court's failure to depart under § 5H1.6, its failure to vary below the Guidelines range, or both.

Post-*Booker*, courts recognize two paths by which a sentencer may rely on a defendant's family circumstances to arrive at a sentence below the recommended range: (1) Guidelines-based departures described in Chapter 5, and (2) variances from the advisory range in light of the § 3553(a) factors. *See United States v. Blue*, ___ F.3d ___, No. 07-5296, 2009 WL 578678, at *5 (6th Cir. Mar. 9, 2009). The first is subject to a well-established constraint: "[A] district court's decision to deny a downward departure is unreviewable unless the lower court incorrectly believed that it lacked the authority to grant such a departure." *United States v. Madden*, 515 F.3d 601, 610 (6th Cir. 2008). Junior does not argue absence-of-authority grounds for reviewability, nor do we find any. To the extent that Elliot Junior sees error in the refusal to vary, he is essentially arguing that his sentence is too long to accomplish the purposes set forth in § 3553(a), a substantive-reasonableness complaint which we consider in Section VI.

VI.

We turn to Elliot Junior's substantive-reasonableness arguments, applying the following principles:

> A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor. The applicable Guidelines range represents the starting point for substantive-reasonableness review because it is one of the § 3553(a) factors and because the Guidelines purport to take into consideration most, if not all, of the other § 3553(a) factors. While a district court may not presume that the range is reasonable, a properly calculated within-Guidelines sentence will be afforded a rebuttable presumption of reasonableness on appeal.

*United States v. Haj-Hamed*, 549 F.3d 1020, 1025 (6th Cir. 2008) (internal citations and quotation marks omitted). Our "overall concern is whether the district court imposed a sentence sufficient, but not greater than necessary, to comply with the purposes of the statutory sentencing scheme." *United States v. Young*, No. 07-3926, 2009 WL 331589, at *10 (6th Cir. Feb. 12, 2009) (citing 18 U.S.C. § 3553(a) and *United States v. Alexander*, 543 F.3d 819, 822 (6th Cir. 2008)).

Elliot Junior argues unreasonableness because he expected greater leniency. Under his plea agreement, the government recommended 70–87 months' imprisonment. And he claims that the stipulated facts in his plea might have warranted a sentence as low as 40 months. Compared to the 202 months' imposed, so the argument goes, his sentence is greater than necessary, and thus substantively unreasonable.

Elliot Junior's argument fails to appreciate our presumption of reasonableness when reviewing a sentence within the properly-calculated, advisory-Guidelines range. *Haj-Hamed*, 549 F.3d at 1025. Whatever expectations Elliot Junior harbored, they do not defeat that presumption. In fact, Junior offers nothing to overcome the presumption. He does not argue, and nothing in the records suggests, that the district court acted arbitrarily. Rather, the district court thoroughly considered the § 3553(a) factors. *See United States v. Mastromatteo*, 538 F.3d 535, 547 (6th Cir. 2008) (rejecting reasonableness challenge where the district court reviewed each of the § 3553(a) factors). The sentencing judge expressly addressed Elliot Junior's arguments that he deserved a lower sentence due to mitigating family circumstances and his limited leadership over Burke. After considering these points, the district court settled on a sentence that it judged to properly reflect Junior's disrespect for the law (he resumed selling drugs after the search-warrant execution, when police caught him) and the extent of his drug operation (for nearly three years, he conspired with three different supply sources to distribute 3000 pounds of marijuana). In doing so, the district court did not abuse its discretion. *See Haj-Hamed*, 549 F.3d at 1028 ("an appellate court should generally defer to the special competence of the district court in determining whether family circumstances are so extraordinary as to justify a departure or a variance from a Guidelines sentence." (internal quotation marks omitted)).

By invoking *Gall v. United States* to argue unreasonableness, Elliot Junior overreaches. *Gall* involved a "dramatic contrast" between the defendant's criminal activity and his post-offense behavior. 128 S. Ct. at 601. This made it "not unreasonable for the District Judge to view Gall's

immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he had matured and would not engage in such impetuous and ill-considered conduct in the future." *Id*. Compare *Gall*'s "dramatic contrast" with Elliot Junior, who returned to selling drugs within a year of police catching him. Attentive to Junior's relapse, the district court viewed him as evincing a disrespect for the law that warranted deterrence.

Elliot Junior's sentence passes substantive-reasonableness review.

VII.

As for Elliot Senior, he argues that the district court erred by viewing his prior drug-trafficking offenses as unrelated for career-offender purposes. *See* U.S.S.G. § 4B 1.1(a) (2006 ed.). But absent clear error, this court defers to a district court's relatedness-of-prior-offenses determination. *United States v. Esteppe*, 483 F.3d 447, 450 (6th Cir. 2007). The record does not show clear error. Section 4B 1.1(a) requires, among other elements, that the defendant "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Elliot Senior admits two Kentucky state court convictions for drug-related offenses. Senior nevertheless maintains that the district court should have found those convictions related for § 4B1.1(a) purposes because the state court "functionally consolidated" his convictions.

Under our deferential standard, the district court did not clearly err. Elliot Senior's two drug offenses occurred on separate days: June 29 and July 1, 1993. One involved selling cocaine; the

other, marijuana. While Senior urges on appeal that "we do not know for certain that they did not both occur on the same day or at the same time," he conceded before the district court that his offenses "occurred, it appears, two or three days apart." We also know that the state prosecutor indicted the offenses separately, and that they proceeded to sentencing separately. Yet Elliot Senior insists that "they were functionally consolidated" for sentencing, though neither the record nor the relevant law supports that contention. *See United States v. Horn*, 355 F.3d 610, 614 (6th Cir. 2004) ("We have stated several times that cases are not consolidated when offenses proceed to sentencing under separate docket numbers, cases are not factually related, and there was no order of consolidation.") (quotation marks omitted). The district court, therefore, properly enhanced Elliot Senior's Guidelines calculation under U.S.S.G. § 4B1.1.

## VIII.

Relying on *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456 (2007), Elliot Senior argues that the district court treated the Guidelines as mandatory and "failed to indicate a full understanding . . . that [it had] tremendous sentencing discretion." We think not. The district court noted the impact of "the *Booker* and *Fanfan* decisions" on the Sentencing Reform Act, and focused on "impos[ing] a sentence sufficient but not greater than necessary to comply with the purposes of [18 U.S.C. § 3553(a)(2)]." These comments demonstrate that the district court viewed the Guidelines as advisory and appreciated the discretion that *Rita* affords.

Elliot Senior also points to sundry district courts that included career-offender enhancements in Guidelines calculations, but then imposed lower sentences than what the Guidelines recommended. According to Senior, the willingness of other district courts to impose below-Guidelines sentences suggests that the district court here did not understand the breadth of its discretion. This argument overlooks the nature of our appellate review. District courts, of course, enjoy sentencing discretion. This court does not. We review for error, conferring a rebuttable presumption of reasonableness on sentences fixed within a properly-calculated Guidelines range. *Haj-Hamed*, 549 F.3d at 1025. Elliot Senior does not rebut this appellate presumption by citing to district courts that, in different circumstances, exercised their discretion differently.

Relatedly, Elliot Senior also takes issue with the district court's decision not to depart downward. That, however, as we decided above when considering the like argument from Junior,"is unreviewable unless the lower court incorrectly believed that it lacked the authority to grant such a departure." *Madden*, 515 F.3d at 610. Although Elliot Senior theorizes that "it is possible that the district court erroneously believed that it lacked the authority to" depart downward, guesswork about possibilities does not suffice, and we decline to review the downward-departure challenge.

IX.

A sentence violates procedural reasonableness if the district court ignores nonfrivolous arguments. *See United States v. Thomas*, 498 F.3d 336, 341 (6th Cir. 2007) (vacating a sentence where certain "arguments went unmentioned and unaddressed"). Elliot Senior accuses the district

court of violating this requirement by failing to adequately address his argument that "the Guidelines overstated his criminal history." The record, however, shows that the district court extensively examined whether the career-offender provisions applied to Elliot Senior. The district court also addressed Senior's arguments that the state court mishandled his convictions by failing to consolidate them. Finally, the district court explicitly rejected Senior's contention that the Guidelines overstated his criminal history. Thus, the district court satisfied procedural reasonableness. *Rita* states that "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." 551 U.S. at ___,127 S.Ct. at 2468. *Rita* goes on to observe that when "a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Id.* Although Elliot Senior complains that the district court should have said more about the state court's failure to consolidate his 1993 conviction, the district court commented at length on the "unique situation" surrounding Elliot Senior's prior offenses. We conclude that the district court did not impose a procedurally unreasonable sentence. *See Madden*, 515 F.3d at 612 (holding a district court's explanation—although "brief and somewhat opaque"—procedurally reasonable where "the record as a whole shows that the court adequately considered [the defendant's] mitigating arguments and provided a reasoned basis for the sentence that it imposed."); *see also United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006) ("When a district court adequately explains *why* it imposed a particular sentence, especially one within the advisory Guidelines range, we do not

further require that it exhaustively explain the obverse—*why* an alternative sentence was *not* selected—in every instance.").

X.

Elliot Senior claims that the district court, by applying the career-offender enhancement to his advisory-Guidelines calculation, created an unwarranted sentencing disparity in violation of 18 U.S.C. § 3553(a)(6). To support this view, Senior urges a comparison of his prior offenses with those of other career offenders. Elliot Senior twice sold drugs to the same undercover officer, once on June 29, 1993, and again on July 1, 1993. Most career offenders, at least in Senior's assessment, have committed more serious and more distinct predicate offenses. And sentencing Elliot Senior in the same way as these run-of-the-mill career offenders supposedly results in an impermissible disparity. We disagree. The Seventh Circuit articulates the flaw in Senior's argument:

> [I]t is pointless for a defendant whose own sentence is within the Guidelines to raise [an unwarranted-disparity claim]. As we observed in *United States v. Boscarino,* 437 F.3d 634, 638 (7th Cir.2006): "Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly. That was the main goal of the Sentencing Reform Act. The more out-of-range sentences that judges impose . . . , the more disparity there will be. A sentence within a properly ascertained range therefore cannot be treated as unreasonable by reference to [§ 3553(a)(6)'s] unwarranted disparity provision."

*United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008); *see also United States v. Kirchhof*, 505 F.3d 409, 416 (6th Cir. 2007).

And the district court took steps to avoid an unwarranted disparity. As noted above, defense counsel argued that Senior's prior convictions should be viewed as related for career-offender purposes. Although the district court rejected those arguments, they still benefitted Senior because the district court, acknowledging the "unique situation" surrounding his prior convictions, decided that "based upon [those] arguments made by [defense counsel], the Court will take into account the procedural situation that he mentioned, and my starting point will be in the guidelines, but it will be at the bottom of the guideline range." And by beginning at "the bottom," the district court worked to avoid an unwarranted disparity, exercising its discretion to craft a sentence reflecting the procedural circumstances of Elliot Senior's prior convictions.

XI.

We affirm both defendants' sentences.

-18-