NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0672n.06
Filed: September 6, 2006

Case No. 05-5346

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| WILLIE DIXON, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: BATCHELDER and SUTTON, Circuit Judges; COFFMAN*, District Judge.

ALICE M. BATCHELDER, Circuit Judge. Willie Dixon ("Dixon") appeals the sentence imposed by the district court after Dixon pled guilty to one count of conspiracy to possess and possession of a controlled substance (Dilaudid hydromorphone) with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. Because the district court considered all of the relevant factors contained in 18 U.S.C. § 3553 and imposed a reasonable sentence, we affirm.

I. Factual Background

A grand jury in the Western District of Tennessee returned a superseding indictment on March 30, 2004, charging Dixon with one count of conspiracy to possess and possession of a controlled substance (Dilaudid hydromorphone) with the intent to distribute, in violation of 21

---

*The Honorable Jennifer B. Coffman, United States District Judge for the Eastern and Western Districts of Kentucky, sitting by designation.

U.S.C. § 846 ("Count Two"); one count of possession of a controlled substance (Dilaudid hydromorphone) with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 ("Count Three"); one count of conspiracy to possess a controlled substance (Oxycontin 2oxycodone) with the intent to distribute, in violation of 21 U.S.C. § 846 ("Count Four"); and one count of possession of a controlled substance (Oxycontin 2oxycodone) with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 ("Count Five").[1]

Dixon entered a guilty plea to Count Two of that indictment, and a Pre-Sentence Investigation Report ("PSR") was prepared, which calculated Dixon's base offense level based on possession of 2,345 Dilaudid pills at 90 milligrams per pill, and 5,000 additional pills that he had given to one of his co-defendants. According to the drug conversion table in the United States Sentencing Guidelines Manual, one gram of Dilaudid is equivalent to 2.5 kilograms of marijuana, *see* U.S.S.G. § 2D1.1 cmt., so 661.05 grams of Dilaudid (7,345 x .09) equals 1,652.63 kilograms of marijuana. That amount of marijuana provided a base offense level of 32, which was reduced by three levels due to Dixon's acceptance of responsibility. With six criminal history points yielding a criminal history category of III, the PSR's calculations under the Sentencing Guidelines provided a range of 108 to 135 months' imprisonment.

At the sentencing hearing, the government made a motion to limit the number of pills possessed to the 2,345 actually found on Dixon's person, which would lower the base offense level to 28 (90 mg Dilaudid/pill x 2345 pills = 211.05 g. Dilaudid = 527.63 kg. marijuana). *See* U.S.S.G. § 2D1.1(c)(6). The government then moved for a three-level reduction in the offense level for

---

[1]The superseding indictment charged Dixon and two co-conspirators. Count One of the indictment did not pertain to Dixon.

acceptance of responsibility and for a downward departure under U.S.S.G. § 5K1.1, requesting that Dixon be sentenced at an offense level of 18 and criminal history category of III. This would have yielded a range of 33 to 41 months, and the government asked for a sentence at the low end of that range.

In hopes of receiving a further downward departure, Dixon testified that he suffers from a variety of medical ailments, that he is the only person available to assist in the care of his 93-year-old mother who lives in an assisted-living facility, that he does volunteer work for the Urban League, and that he would continue to cooperate with law enforcement. Dixon also called Beverly Boddie of the Urban League, who testified that Dixon helped with one of its programs and maintenance of its computer system, and Ethel McCorkel, a nurse at St. Francis Nursing Home, who testified that Dixon tries to visit his mother every day. Finally, one of Dixon's friends testified that Dixon is a good person.

Dixon argued that the base offense level was unreasonable because the U.S. Sentencing Commission created the 2.5 kg marijuana: 1 mg Dilaudid ratio without a principled basis, especially considering that it would take 400-700 grams of heroin to reach the same base offense level as that set for the 211.05 grams of Dilaudid. Dixon asked the court to impose a sentence of twelve months, with six months being served in a half-way house and the remainder served in home confinement, considering his medical conditions, familial obligations, and substantial assistance in the prosecution of others.

The district court rejected this suggestion. However, granting the government's motion to limit the number of pills Dixon possessed, the court found that number to be 2,345, which provided a base offense level of 28 under the sentencing guidelines. The court also granted a three-level

reduction for acceptance of responsibility and departed downward to an offense level of 14 with a criminal history category of III, below the government's request for a downward departure to level 18. This yielded a range of 21 to 27 months. The court noted that Dixon was asking it to depart downward under U.S.S.G. § 5K2.0 based on Dixon's health and his familial responsibilities, but declined to do so, finding that Dixon did not need to visit his mother every day because she was being cared for, and that he was on medication to control his health issues. And the court acknowledged the testimony of Dixon's witnesses, but explained that the good works to which those witnesses testified were only of very recent vintage. The court imposed a sentence of 21 months' imprisonment, the lowest sentence in the guideline range, to be followed by three years of supervised release. After specifically recognizing that the sentencing guidelines are advisory, the court stated that "[t]he court believes that this sentence is needed based upon its consideration of the factors under 3553(a), that this reflects the seriousness of the offense[,] to provide respect for the law[,] and provide just punishment for the offense[,] and to avoid adequate deterrence to criminal conduct[,] and to protect the public from further crimes of the defendant." Dixon timely appealed.

## II. Analysis

Pursuant to the Supreme Court's mandate in *United States v. Booker*, 543 U.S. 220, 261 (2005), we review for reasonableness a sentence imposed under an advisory guidelines scheme. The district judge must consider the list of factors in 18 U.S.C. § 3553(a), which includes the applicable sentencing guidelines range, when determining an appropriate sentence. *See United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005). In *United States v. Williams*, 436 F.3d 706 (6th Cir. 2006), we stated that a sentence within the guidelines range carries a rebuttable presumption of reasonableness. *Id.* at 708. Moreover, it is up to a defendant who is dissatisfied with his sentence to show how the

4

district court's failure to address explicitly a particular factor or factors resulted in an unreasonable sentence. *See id.* at 708-709.

On appeal, Dixon argues that the district court erred because it imposed what it considered to be a reasonable sentence within the guidelines range and thereby "in effect found the guideline range was presumptively reasonable." Dixon argues as well that the district court failed adequately to take into account the § 3553(a) factors because the court did not "elaborate on how each of these factors applied in the present case." We find no merit to either contention.[2]

To begin with, nothing in the transcript of the sentencing proceedings provides any support for Dixon's contention that the district court considered the guideline range to be presumptively reasonable. To the contrary, the district court explained that it was "simply using the guidelines as an advisory or assistive device in rendering its decision." The district court not only correctly calculated the applicable guideline range, it departed to a range well <u>below</u> the range to which the government had asked for a downward departure. Finally, although the court did in fact impose the lowest sentence in that range, it explained why it had chosen that sentence.

The district judge need not recite each of the factors set out in 18 U.S.C. § 3553 and explain how it either applies or does not apply to the particular case. *See Williams*, 436 F.3d at 708-709 (stating that a "ritual incantation of the factors" has never been required). Here, the district court explicitly considered the fact that the "introduction of these types of drugs into this community is dangerous," and explicitly made reference to five of the § 3553 factors. Dixon points to no facts or

---

[2]Though Dixon argues on appeal that his sentence is unreasonable for the same reasons that he argued for a downward departure in the district court, Dixon does not argue on appeal that the district court should have granted the further downward departure. This court has held that, post-*Booker*, a defendant still may not appeal a district court's decision not to depart downward unless the defendant can show that the district court did not believe it had the authority to do so. *See United States v. Puckett*, 422 F.3d 340, 345 (6th Cir. 2005). Dixon has not argued that the district court committed such an error.

factors that the court should have considered but did not, nor does he show that any such facts or factors would have affected his sentence favorably had the court considered them.

As we explained in *Kirby*, and recently reiterated in *United States v. Cage*, __ F.3d __, 2006 WL 2346328 (6th Cir. August 15, 2006), "[t]he court need not recite these factors but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review." *Kirby*, 418 F.3d 626. Here, the district court explained at length how it arrived at the sentence it imposed, and why it did not impose the much lower sentence that Dixon believed was appropriate. The court explicitly stated that the sentence it was imposing was necessary in light of the factors set out in § 3553(a), which it then enumerated. That the court imposed the sentence in terms of the guidelines calculation does not demonstrate that it failed to engage in the reasoning necessary to comply with the dictates of § 3553, or that it found the guidelines sentence presumptively reasonable. And even if the record could be said to demonstrate that the district court made – either implicitly or explicitly – such a finding, we have held that the district court does not err in recognizing that a correctly calculated guidelines sentence carries a rebuttable presumption of reasonableness, and that such recognition is not evidence that the court failed to engage in the requisite exercise of independent judgment in determining a sentence. *See Cage*, 2006 WL 2346328, at *3-4.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.