**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0532n.06

No. 07-6147

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 03, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| LUIS ALBERTO VALLELLANES, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| _____ | ) | |

Before: SILER, MOORE, and GRIFFIN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Luis Alberto Vallellanes ("Vallellanes") appeals the eighty-four-month sentence imposed by the district court following his plea of guilty to aiding and abetting the possession of 500 grams or more of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Vallellanes, through counsel, argues that the within-Guidelines sentence imposed is substantively unreasonable. Vallellanes also filed a pro se brief making two additional arguments: (1) the district court should have applied pre-Sentencing Reform Act of 1984 law, which would have provided for parole and additional good-time credits; and (2) his attorney provided ineffective assistance at sentencing by

failing to move for a downward departure based upon Vallellanes's family obligations.[1]  For the reasons explained below, we **AFFIRM** Vallellanes's sentence.

## I.  BACKGROUND

On October 26, 2006, Vallellanes was arrested for his role in a drug transaction with a confidential informant ("CI") in Memphis, Tennessee.  In October 2006, the CI contacted Juan E. Reyna, Jr. ("Reyna") to inquire about purchasing marijuana.  Reyna said that he did not have any marijuana but that he knew someone who had cocaine to sell.  On October 25, 2006, the CI met with Reyna and agreed to purchase one kilogram of cocaine for $20,000.  The next day, the CI called Reyna and arranged a meeting to complete the transaction at a parking lot off Sycamore View and Summer Avenue in Memphis.  Reyna arrived at the parking lot in a Ford Mustang driven by Vallellanes, who Reyna introduced to the CI.  Reyna verified that the CI had the money and told the CI to wait in the parking lot until Reyna and Vallellanes got back.  Twenty-five minutes later, Vallellanes and Reyna returned, trailed by a Nissan pickup truck driven by Arcos Guerra-Guillerm ("Guerra-Guillerm").  Reyna and Vallellanes exited the Mustang, and Reyna got into the passenger side of the CI's vehicle while Vallellanes got into Guerra-Guillerm's Nissan truck.  Guerra-Guillerm gave Vallellanes a box, which Vallellanes then carried to the CI's vehicle and handed to the CI.  Later tests revealed that the box contained approximately one kilogram of cocaine.  Guerra-Guillerm

---

[1]On April 10, 2008, Vallellanes filed a pro se motion requesting, among other things, to have counsel withdraw and to have the files and transcripts from the district court transmitted to him.  On September 8, 2008, the clerk of this court entered an order denying Vallellanes's motion but granting Vallellanes leave to file a supplemental pro se brief.  On October 9, 2008, Vallellanes filed a pro se supplemental brief and a pro se motion to reconsider the September 8, 2008 order.  We have considered and now **DENY** Vallellanes's motion for reconsideration of the September 8, 2008 order.  However, we address below the additional arguments raised by Vallellanes in his supplemental pro se brief.

2

later told investigators that Vallellanes had hired him to bring the box containing the cocaine to the parking lot.

Vallellanes was charged with and pleaded guilty to one count of aiding and abetting the possession of 500 grams or more of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Prior to sentencing, the government prepared a Presentence Investigation Report ("PSR") that calculated a Guidelines range of 84 to 105 months of imprisonment based on a total offense level of 25 and a criminal history category of IV. Vallellanes's total offense level included a three-level downward adjustment for acceptance of responsibility pursuant to Guideline § 3E1.1 and a two-level upward adjustment for a leadership role pursuant to Guideline § 3B1.1(c). Additionally, the PSR reported that Vallellanes had a long history of substance abuse; he began using marijuana at age 14 or 15 and cocaine at age 21 or 22 and continued to use both frequently over the years. On August 8, 2007, Vallellanes filed a sentencing memorandum objecting to the PSR's recommendation of a two-level enhancement for his role in the offense pursuant to Guideline § 3B1.1(c). The memorandum argued that Vallellanes was merely a "conduit" for the cocaine transaction and that, although he exercised physical control over the cocaine at one point, he did not "exert any authority/control over any of the other participants." Record on Appeal ("ROA") at 15 (Vallellanes Sent. Mem. at 2). Noting that without the enhancement Vallellanes's Guidelines range would be 70 to 87 months, the memorandum asked the district court to sentence Vallellanes to 70 months of imprisonment.

At sentencing on September 14, 2007, Vallellanes's counsel withdrew the objection to the two-level enhancement for a leadership role under Guideline § 3B1.1(c). Conceding that the § 3B1.1 enhancement was permissible, Vallellanes's counsel nonetheless continued to argue that Vallellanes

3

did not play a significant leadership role and should be sentenced to 70 months of imprisonment based on the 70-87 month Guidelines range that would have applied absent the enhancement. The government asked the district court to sentence Vallellanes within the 84-105 month Guidelines range.

After hearing from the parties, the district court announced a sentence of 84 months of imprisonment—at the bottom of the Guidelines range—to be followed by four years of supervised release. The district court explained that this was an extremely serious offense and that, although Vallellanes was not a high-level leader or organizer, he did play a leadership role by hiring Guerra-Guillerm to transport the cocaine to the meeting location. Additionally, the district court noted that Vallellanes had a substantial criminal history, including drug offenses and a firearm-related offense, and yet had received relatively little punishment for his prior offenses. The district court also observed, however, that Vallellanes's drug-abuse problem appeared to be "at the root of" Vallellanes's criminal conduct. Sent. Tr. at 12. In light of Vallellanes's drug problem, the district court decided to sentence Vallellanes at the bottom of the 84-105 months Guidelines range, noting that "I would go to the upper end of the Guidelines on this record, except for the reasons I've stated, in that I think drugs drive this thing." Sent. Tr. at 13. Judgment was entered against Vallellanes on September 19, 2007, and Vallellanes filed his notice of appeal the same day.

## II. ANALYSIS

### A. Substantive Reasonableness

Vallellanes's principal argument on appeal is that his within-Guidelines sentence is substantively unreasonable. We review the sentence imposed by the district court for reasonableness. *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008). Reasonableness review

has two components: procedural and substantive. *See Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 597 (2007). First, this court must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* Second, we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* In undertaking this review, we "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* "The fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* "A sentence is substantively unreasonable if the district court select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor." *Walls*, 546 F.3d at 736 (internal quotation marks omitted) (alterations in original). If the sentence imposed is within the properly calculated Guidelines range, this circuit applies a rebuttable presumption of reasonableness. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir.) (en banc), *cert. denied*, 129 S. Ct. 68 (2008).

Vallellanes does not contend that his sentence is procedurally unreasonable. We therefore turn to review of his sentence for substantive reasonableness. The PSR calculated Vallellanes's Guidelines range to be 84 to 105 months of imprisonment based upon a total offense level of 25 and a criminal history category of IV. The district court adopted the PSR's calculations and sentenced Vallellanes to 84 months, at the bottom of the Guidelines range. Because Vallellanes's sentence falls within the Guidelines range, we apply a rebuttable presumption of reasonableness. *Vonner*, 516 F.3d

5

at 389. "Although this presumption is rebuttable, we cannot reverse a sentence simply because we determine that a different sentence would be appropriate." *United States v. Higgins*, 557 F.3d 381, 398 (6th Cir. 2009).

Vallellanes argues that his sentence is substantively unreasonable for two reasons: (1) the sentence overstates the seriousness of the offense because the district court imposed a two-level enhancement under Guideline § 3B1.1(c) for Vallellanes's leadership role; and (2) the district court gave unreasonable weight to certain of the § 3553(a) factors.

First, Vallellanes argues that the district court's application of a two-level enhancement for a leadership role under Guideline § 3B1.1(c) resulted in a substantively unreasonable sentence. The PSR indicated that Vallellanes hired a man named Arcos Guerra-Guillerm to transport one kilogram of cocaine to the location of the controlled buy with the confidential informant. The district court found that although Vallellanes was not a high-level leader, he played a leadership role by hiring Guerra-Guillerm to transport the drugs. Through counsel, Vallellanes concedes that the two-level enhancement imposed by the district court for this leadership role was "arguably permissible under the Guidelines," and he does not appeal the enhancement itself. Vallellanes Br. at 12. Vallellanes nonetheless contends that the enhancement "overstates the serious of [his] conduct as a leader/organizer" and that his sentence, which is based in part on this enhancement, is therefore substantively unreasonable. *Id.* This argument is unpersuasive. Vallellanes hired another individual to transport cocaine to the location of a drug transaction, and Vallellanes concedes that it was permissible for the district court to impose a two-level enhancement for this conduct. Vallellanes points to no particular facts or circumstances indicating that the imposition of the § 3B1.1(c) enhancement in this case resulted in an unreasonable sentence, nor does he cite any case law that

6

would support his argument. Instead, he makes only the unsupported and conclusory assertion that the imposition of the enhancement somehow "overstates" the seriousness of his conduct. Because Vallellanes fails to overcome the presumption of reasonableness, we conclude that this argument lacks merit.

Vallellanes also argues that his sentence is substantively unreasonable because the district court gave undue weight to certain of the § 3553(a) factors. Vallellanes contends that the district court "primarily emphasized the seriousness of the crime, the need to protect the public and the need to deter others with a significant sentence," while failing adequately to consider "the history and characteristics of the defendant and the need for education, medical care or correctional treatment, among others." Vallellanes Br. at 12-13 (internal quotation marks omitted). The sentencing transcript, however, reveals that the district court gave ample consideration to the § 3553(a) factors that Vallellanes says were ignored—"the history and characteristics of the defendant" and the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1) & (a)(2)(D). After noting that Vallellanes was "31 years old" and "not highly educated," the district court considered his criminal history in detail. Sent. Tr. at 10. The district court observed that Vallellanes had several prior drug convictions as well as a conviction for wanton endangerment in which Vallellanes "brandished a semi-automatic pistol in front of a group of people and then discharged it and fled from the police." *Id.* at 11. Despite this firearm-related conviction, the district court concluded that Vallellanes was not "a violent person" and that his prior convictions were "consistent with this crime insofar as they involve drug use and drug trafficking." *Id.* Noting that Vallellanes had received little

time in prison despite his significant criminal record, the district court observed that it was "obvious no one has ever punished Mr. Vallellanes." *Id.* at 12.

The district court also considered Vallellanes's history of drug abuse and the need for Vallellanes to receive drug treatment while in prison. The district court observed that "drugs are at the root" of Vallellanes's criminal history and that if "Vallellanes had control of his drug habit, he would be ninety percent of the way to being a law[-]abiding citizen." *Id.* at 12-13. Further, the district court took Vallellanes's drug-abuse problem into consideration in selecting a sentence at the low end of the Guidelines range. In determining that an eighty-four-month sentence was appropriate, the district court noted that "I would go to the upper end of the Guidelines on this record, except for the reasons I've stated, in that I think drugs drive this thing." *Id.* at 13. The district court also gave ample consideration to the need for Vallellanes to receive education and treatment for his drug problem in prison. The court noted that "[t]here is an opportunity for training and education for Mr. Vallellanes while incarcerated. There is an even more important opportunity in this case for him to receive drug treatment, which is badly needed on this record." *Id.* at 12. Finally, the district court recommended Vallellanes for the 500-hour drug treatment program, adding that "I think that's the key to the situation." *Id.* at 14.

In sum, the district court reviewed the pertinent § 3553(a) factors and did not give an unreasonable amount of weight to some factors over others. Vallellanes contends that a lower sentence would have been sufficient to comply with the purposes of § 3553(a); even if we agreed, however, "we cannot reverse a sentence simply because we determine that a different sentence would be appropriate." *Higgins*, 557 F.3d at 398. Because Vallellanes has failed to meet his burden to rebut the presumption of reasonableness, we conclude that the sentence is not substantively

unreasonable, and the district court did not abuse its discretion in sentencing Vallellanes to eighty-four months of imprisonment.

## B. Parole and Good-Time Credits

In a supplemental pro se brief, Vallellanes argues that *United States v. Booker*, 543 U.S. 220 (2005), effectively required a return to the sentencing regime in place prior to the Sentencing Reform Act of 1984 ("SRA"), Pub. L. No. 98-473, Title II, 98 Stat. 1987 (Oct. 12, 1984). Vallellanes argues that his sentence should have been based on the old law, which provided for parole and additional good-time credits (both of which were repealed by the SRA). *See* 18 U.S.C. § 4201 *et seq.* (parole) (repealed 1984, effective Nov. 1, 1987 for offenses committed after that date); 18 U.S.C. § 4161 (good-time credits) (repealed 1984, effective Nov. 1, 1987 for offenses committed after that date). Vallellanes fails to recognize, however, that although *Booker* severed and excised the mandatory provisions of the Sentencing Guidelines, it also made clear that the "remainder of the [SRA] 'function[s] independently.'" *Booker*, 543 U.S. at 259 (quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987)); *see also United States v. Moon*, 513 F.3d 527, 541 (6th Cir.), *cert. denied*, 128 S. Ct. 2493 (2008). *Booker* invalidated just two provisions of the SRA: "the provision that requires sentencing courts to impose a sentence within the applicable Guidelines range (in the absence of circumstances that justify a departure), see 18 U.S.C. § 3553(b)(1) . . ., and the provision that sets forth standards of review on appeal, including *de novo* review of departures from the applicable Guidelines range, see § 3742(e)." *Booker*, 543 U.S. at 259. Although Vallellanes contends that *Booker*'s excision of 18 U.S.C. § 3553(b)(1) somehow requires invalidation of the SRA provisions repealing parole and good-time credits, this argument is contrary to *Booker*'s clear directive that the "remainder of the [SRA] 'function[s] independently.'" *Id.* (quoting *Alaska*

9

*Airlines*, 480 U.S. at 684). Because *Booker* did not invalidate the SRA's repeal of the pre-SRA parole and good-time-credit provisions, we conclude that Vallellanes's argument lacks merit.

**C. Ineffective Assistance of Counsel**

Finally, Vallellanes argues in his supplemental brief that his counsel at sentencing provided ineffective assistance by failing to move for a downward departure based upon Vallellanes's family circumstances. He asserts that his ten-year-old daughter, who lives with her mother in Puerto Rico, needs him at home and is emotionally impacted by his absence. We generally do not consider ineffective-assistance-of-counsel claims on direct appeal because the record of trial counsel's allegedly deficient performance is not fully developed. *United States v. DeJohn*, 368 F.3d 533, 548 (6th Cir.), *cert. denied*, 543 U.S. 988 (2004); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) ("In light of the way our system has developed, in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."). We therefore decline to consider Vallellanes's claim of ineffective assistance of counsel in this direct appeal.

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** the sentence imposed by the district court.