NOT FOR FULL-TEXT PUBLICATION
File Name: 10a0409n.06

No. 09-1103

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 12, 2010**
LEONARD GREEN, Clerk

**UNITED STATES OF AMERICA,**

  **Plaintiff-Appellee,**

v.

**CHRYSTALIN CARTER,**
**a/k/a Chrystalin Carter-Smith,**

  **Defendant-Appellant.**

_____/

**ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN**

**BEFORE: BOGGS, SUHRHEINRICH, and ROGERS, Circuit Judges.**

  **SUHRHEINRICH, Circuit Judge.** Chrystalin Carter ("Carter") appeals her convictions and sentence for her role in two conspiracies: (1) bank account fraud, and (2) mortgage fraud. On appeal, Carter argues that the district court 1) erroneously refused to give a jury instruction on good faith, 2) erroneously restricted the testimony of a defense witness, 3) imposed an unreasonable sentence, and 4) used an improper method of jury selection. For the reasons set forth below, we **AFFIRM** the convictions and sentence.

**I. Background**

**A. Account Takeover Conspiracy**

  The first three convictions arose from a conspiracy, designed by Carter and Elise Bell ("Bell"), to fraudulently remove $150,000 from the account of Donna Cheng ("Cheng"). Carter has an extensive criminal history, including convictions for embezzlement, forgery, uttering and

publishing, and possession of a firearm by a felon. Bell, a "graphic designer," is a longtime friend of Carter's who has used her expertise in graphic design to create forged documents.

Cheng had a money market account at Charter One Bank. In December 2004, Samer Beidoun ("Beidoun"), a teller at Charter One, used Charter One's computer system to access Cheng's personal information at work after hours and without a legitimate business purpose. Carter and Bell then used this information to obtain a $150,000 counterfeit check in Cheng's name. Next, an acquaintance provided Carter with the contact information for Tequila Wilkerson ("Wilkerson")—an assistant manager at a Comerica Bank branch located in Sterling Heights, Michigan. Carter set up a meeting with Wilkerson, whom Carter had apparently never met, purportedly to discuss real estate investments. Carter and Bell, who presented herself as "Donna," met with Wilkerson a few days later. The conversation at the meeting eventually turned from real estate to Wilkerson's work at the bank. Carter asked about Comerica's security systems and the bank's procedures for opening an account, and Wilkerson answered these questions in detail. Carter and "Donna" then informed Wilkerson that they would open up accounts at the bank in the coming days.

Subsequent to this meeting, Bell met Wilkerson at a Comerica branch in Sterling Heights, Michigan, opened an account, and deposited the $150,000 counterfeit check. Once the standard bank hold on the account expired, Bell used Cheng's name to withdraw the money, and after numerous transactions, a substantial amount of that money was directed to accounts controlled by Carter: an account at Huntington Bank in the name of Breeze Financial and an account at Peoples Trust Credit Union in the name of Blaque Reign Contracting. For example, a check in the amount of $47,903.47 was issued from Cheng's Comerica bank account and deposited into the Breeze Financial account, and a check in the amount of $34,876.47 was issued from Cheng's Comerica Bank account and

2

deposited into the Blaque Reign Contracting account. Through these and other transactions, Carter made approximately $91,779.94 from the fraud. Cheng did not learn about the withdrawal from her account for several months. Once she did, she notified her bank, at which point bank employees and law enforcement discovered and unraveled the conspiracy.

## B. Mortgage Fraud Scheme

The fourth conviction arose from Carter's dealings in July 2003 with a home in Detroit, Michigan, located at 4095 Tuxedo Street. Two weeks after purchasing this home, Carter executed a quitclaim deed of the property to herself and her boyfriend, Kenneth Pitts ("Pitts"), as joint tenants. In July 2004, they executed a quitclaim deed for the property to Pitts alone, and Pitts obtained a $44,000 cash-out mortgage on the property. In September 2004, the property was sold for $57,000 to "Taz Peoples," who was in reality Carter's sister using an alias that Carter has used in the past. For instance, Carter attempted to obtain an Ohio identification card in June 2004 under the name of Taz Peoples, but was apprehended by authorities. Both Carter and Pitts were required to sign the deed, despite the earlier quitclaim deed to Pitts only, because the July 2004 deed had not shown up yet in the formal recording records. Taz Peoples financed the property with a $51,300.00 mortgage, which was used to pay off the $44,000 mortgage. No payments on the $51,300.00 mortgage were made, and the property was soon foreclosed on. Argent Mortgage and its assigns lost $51,300.00 plus related expenses as a result of the transaction.

## C. Procedural History

Carter was indicted and tried for the following charges: 1) conspiracy to use a means of identification of another person to commit access device fraud, in violation of 18 U.S.C. § 1028(f); 2) unauthorized use of an access device—aiding and abetting, in violation of 18 U.S.C. §§

1029(a)(2) & 2; 3) conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 & 1349; and 4) conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 & 1349. Beidoun, Bell, and Wilkerson were also indicted for the first three counts of the indictment. Beidoun and Wilkerson pled guilty prior to trial. Bell's whereabouts are currently unknown. Carter's jury trial began on August 18, 2008, and continued until August 25, 2008. Wilkerson testified for the Government. Carter testified in her defense, and the Government impeached her with her prior convictions. The jury found Carter guilty on all counts, and the district court sentenced her to concurrent 37-month prison terms, followed by three years of supervised release. The court also ordered her to pay restitution amounts of $116,503.67 to Charter One Bank and $53,000.00 to Argent Mortgage. Carter appeals.

## II. Analysis

### A. Jury Instruction

Carter argues that the district court erred when it declined to give a good-faith instruction to the jury. This court reviews "a district court's failure to give a requested jury instruction for abuse of discretion." *United States v. Baker*, 197 F.3d 211, 218 (6th Cir. 1999). "Generally, a defendant is entitled to an instruction on defense theories that are supported by law and raised by the evidence presented." *United States v. Tarwater*, 308 F.3d 494, 510 (6th Cir. 2002) (citing *United States v. Duncan*, 850 F.2d 1104, 1118 (6th Cir. 1988)). But, this court reviews a jury charge "as a whole to determine whether the charge fairly and adequately submit[ted] the issues and law to the jury." *United States v. Heath*, 525 F.3d 451, 455-56 (6th Cir. 2008) (citing *United States v. Buckley*, 934 F.2d 84, 87 (6th Cir. 1991)). "A trial court's refusal to give a requested jury instruction is reversible error only if the instruction is (1) correct, (2) not substantially covered by the actual jury charge, and

4

(3) so important that failure to give it substantially impairs defendant's defense." *Id.* (quoting *United States v. Sassak*, 881 F.2d 276, 279 (6th Cir. 1989)). In sum, this court reverses a district court's decision "only if the instructions, viewed as a whole, were confusing, misleading and prejudicial." *Id.* at 456 (quoting *United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir. 1993)).

Assuming, arguendo, that Carter offered a "correct" jury instruction, her claim still fails because her good-faith defense was substantially covered by the jury charge. *See Tarwater*, 308 F.3d at 510, (proceeding directly to an analysis of the second factor). The district court gave adequate instructions because it instructed the jury on the specific intent required for a conviction. As explained by the trial judge at the hearing on the motion to stay execution of judgment and motion for bond pending appeal:

> [T]he jury instructions made clear that in order for the jury to find the defendant guilty of the charges the jury would have to find that she knowingly, willfully and unlawfully committed the offenses and gave the jury the definition of knowingly, gave the jury the definition of willfully, and gave the definition of unlawfully.

> This court's explanation in *Tarwater*, a tax fraud case, is also instructive:

> The district court instructed the jury on the specific intent required for a conviction for filing false tax returns by stating:

>> The word "willfully," as used in this statute, means a voluntary, intentional violation of a known legal duty. In other words, the defendant must have acted voluntarily and intentionally and with the specific intent to do something he knew the law prohibited, that is to say, with intent either to disobey or to disregard the law. Negligent conduct is not sufficient to constitute willfulness.

>> The jury's conclusion that Tarwater acted willfully would necessarily negate any possibility of "good faith" in filing false tax returns.

*Id.* (internal citations omitted); *see also United States v. Pomponio*, 429 U.S. 10, 13 (1976) (per curiam) (holding in a tax fraud case that a good-faith instruction was unnecessary because the trial

judge adequately instructed the jury on willfulness). Thus, Carter's claim fails because the jury's finding that she had the required mens rea for a conviction negated any possibility of a good-faith defense.

## B. Dismissal of Witness

Carter argues that the district court erred when it limited the direct examination of Kenyon Johnson ("Johnson") on relevancy grounds. This court reviews a district court's evidentiary rulings for an abuse of discretion. *United States v. Wagner*, 382 F.3d 598, 616 (6th Cir. 2004) (citing *United States v. Bartholomew*, 310 F.3d 912, 920 (6th Cir. 2002)). Specifically, "'[b]road discretion is given to district courts in determinations of admissibility based on considerations of relevance . . . and those decisions will not be lightly overruled.'" *Id.* (quoting *United States v. Jackson-Randolph*, 282 F.3d 369, 376 (6th Cir. 2002)).

Johnson testified for the defense that he was a realtor who specialized in refurbishing properties, and that Carter worked as the general contractor for some of his projects. Early in his testimony, the Government objected to his testimony on relevancy grounds. After some discussion, Carter's counsel conceded that Johnson had no personal knowledge of the conduct at issue at trial or of the funds from Cheng's Comerica Bank account. After a proffer by Carter's counsel, the district court dismissed Johnson as a witness. The court gave the following explanation for Johnson's dismissal:

> The offense here regarding the Donna Cheng account relates to discrete monies that were withdrawn from the Donna Cheng account, and allegedly the defendant participated by identifying, by making arrangements with the witness from Comerica that that account be opened at Comerica and money be put in it and then monies were traced from that account to People's Bank and Huntington Bank, and those are discrete transactions. The fact that the defendant was engaged otherwise in a legitimate business is no arguable -- has no arguable relevance to the charges.

Carter contends that the district court should have allowed Johnson to continue testifying because his testimony was relevant to her good-faith argument. Specifically, she maintains that it helped establish that it was customary for Carter to receive large amounts of money into her accounts for refurbishment projects, which she claims supports her position that she was a passive recipient of these funds.

The dismissal was not an abuse of discretion because, as the district court stated, the legality of Carter's other business dealings was not at issue. Johnson's testimony is not relevant to the determination of whether Carter conspired to commit access device fraud, committed access device fraud, conspired to commit bank fraud, or conspired to commit wire fraud, which is where her good-faith defense could find traction. Thus her claim fails.

Moreover, even if the district court abused its discretion, the error was harmless because Carter presented her good-faith argument during her own testimony, making it unlikely that the error materially affected the verdict. *See United States v. Mackey*, 265 F.3d 457, 463 (6th Cir. 2001) (errors regarding the admission of evidence are subject to harmless error analysis).

## C. Sentence

Carter argues that the district court imposed a sentence that was unreasonable and inconsistent with 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005). "Pursuant to the Supreme Court's mandate in *Booker*, we review for reasonableness a sentence imposed under an advisory guidelines scheme." *United States v. Dixon*, 194 F. App'x 344, 347 (6th Cir. 2006) (citation omitted). When this court reviews a sentence, it ensures that the district court committed no significant procedural errors and then considers the substantive reasonableness of the sentence

7

imposed. *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Carter's arguments focus on the substantive reasonableness of her sentence, so this court need not consider whether the sentence was procedurally reasonable. *United States v. Vallellanes*, 339 F. App'x 579, 582 (6th Cir. 2009). "A sentence is substantively unreasonable if the district court select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor." *Id.* (quoting *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008)). There is a rebuttable presumption of reasonableness if the sentence falls within the properly calculated Guidelines range. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

## 1. Sentencing Disparity

Carter argues that the district court erred when it refused to consider the disparity between her sentence and Wilkerson's, pursuant to § 3553(a). A wide disparity does exist between these two sentences: Wilkerson had a Guidelines range of 15-21 months, but was sentenced to one day in prison with credit for one day served and 3 years of supervised release. Carter had a guidelines range of 37-46 months, and was sentenced to 37 months in prison. Nevertheless, the district court did not abuse its discretion when it refused to compare the two sentences. As previously explained by this court:

> Subsection 3553(a)(6) is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct. It is not concerned with disparities between one individual's sentence and another individual's sentence, despite the fact that the two are co-defendants. . . .
>
> A district judge, however, *may* exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence. That action, however,

8

would be a discretionary one because the district court is not *required* to consider that type of disparity under § 3553(a)(6).

*United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007) (citations omitted). Accordingly, Carter's argument fails because the reasonableness of Wilkerson's sentence is not before the court. *See United States v. Burley*, 241 F. App'x 290, 299-300 (6th Cir. 2007).

Although the above analysis is dispositive, it is worth noting that there are many reasonable explanations for the sentencing disparity. Unlike Carter, Wilkerson confessed and cooperated with the Government, she was only convicted on the third count of the indictment, she did not have an extensive criminal history, and she was recruited into the conspiracy by Carter.

## 2. Leadership Enhancement

Carter appeals the 2-point enhancement to her offense level because she was "an organizer, leader, manager, or supervisor" in the subject "criminal activity." U.S.S.G. § 3B1.1(c)). As an initial matter, there is an open question with regard to the standard of review:

> As for the district court's § 3B1.1 legal conclusions, this court has not settled on the appropriate standard–de novo review or, in light of *Buford v. United States*, 532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001), something more deferential. *United States v. Young*, 553 F.3d 1035, 1052 (6th Cir.2009) (noting "confusion within this circuit concerning the standard of review that should be applied to a district court's decision to impose a leadership enhancement under § 3B1.1"); *see also United States v. Ashiq*, 307 Fed. App'x. 913, 915-16 (6th Cir.2009) (same).

*United States v. Elliot*, 327 F. App'x 540, 544 (6th Cir. 2009). In *Elliot*, the court "bypass[ed] settling the standard of review because even under de novo review [the defendant's] challenge fail[ed]." *Id.* Likewise, we decline to resolve this dispute because Carter's claim fails under either standard of review.

9

Here, the focus of Carter's argument is not that the 2-point enhancement was unreasonable on its own; her argument is that it was unreasonable because neither Wilkerson nor Beidoun received such an enhancement. As discussed above, the reasonableness of the sentences received by Carter's co-defendants is not at issue. Nevertheless, even if her argument is construed to mean that Wilkerson and Beidoun were the actual leaders of the conspiracy, it still fails because it was established at trial that Carter led the conspiracy. She received most of the funds, recruited Wilkerson, and planned how to execute the fraud.

### 3. Restitution

Carter argues that her restitution amount was unreasonable when compared to Wilkerson's The court did not order Wilkerson to pay restitution, even though she testified at trial that she received approximately $30,000 for her services; in contrast, the court ordered Carter to pay to Charter One Bank a restitution amount of $116,503.67—the same amount as Beidouin. Again, the reasonableness of Wilkerson's sentence is not at issue. Additionally, the award of restitution and the amount awarded were reasonable because Carter was involved in two fraudulent schemes that led to losses of more than $201,300, and she received a substantial portion of that money. *See United States v. Bogart*, 576 F.3d 565, 569 ("the amount of restitution ordered by the district court is reviewed for an abuse of discretion.")

### 4. Familial Obligations

Carter argues that the district court erred when it did not give a downward departure because she is the primary caregiver of her three children, but mentioned Wilkerson's "extraordinary family obligations" as a reason for her lower sentence. As already discussed, the reasonableness of Wilkerson's sentence is not an issue before the court. Furthermore, the district court acted within

10

its discretion when it did not impose a downward departure for familial reasons after giving Carter the opportunity to argue in favor of a downward departure. *United States v. Husein*, 478 F.3d 318, 326 (6th Cir. 2007) (mentioning that such downward departures are not only discretionary, but also discouraged). Although it is unfortunate that Carter has made choices that will separate her from her children, this reality is not unusual. In fact, it could have been clear error if the district court *had* issued a downward departure. *See United States v. Holmes*, 983 F.2d 1069 (table), 1992 WL 393583, at *7 (6th Cir. Dec. 31, 1992) (per curiam) (holding that despite the defendant's status as the sole supporter of his wife and three children, the district court erred when it gave a downward departure for familial obligations because "departure downward in sentencing is not justified [for family reasons] except in unusual circumstances").

### 5. Tether and Complying with the Directives of the Court

Carter argues, without any supporting case law, that the court erred when it refused to issue a downward departure for the 241 days she spent on tether prior to trial and for her compliance with "the directives of the Court." With regard to the tether argument:

> Under 18 U.S.C. § 3585(b), "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences" in two situations: "(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense . . . ."

*United States v. Carpenter*, No. 07-4496, 2009 WL 4981682, at *4 (6th Cir. Dec. 22, 2009). However, there is no case law that suggests that time on tether can qualify as service of a term of imprisonment under the statute, and there is no plausible argument for why it would count. Carter's "directives of the court" argument, which she does not expound upon, is too vague to warrant consideration, and is thus waived. *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005)

11

("It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'").

### D. Improper Juror Selection

Carter alleges in the "Summary of the Argument" section of her brief that "[the] district court also erred when is [sic] excused the only black juror through questionable blind draw method, even though defense counsel objected." Carter has not adequately raised this issue. It is not discussed anywhere else in her brief except for the above sentence and it was not mentioned at oral argument. Therefore, it too is waived. *See id.*

### III. Conclusion

For the foregoing reasons, we **AFFIRM** Carter's conviction and sentence.